

# THE ATTORNEY GENERAL

## OF TEXAS

**WAGGONER CARR**
**ATTORNEY GENERAL**

AUSTIN 11, TEXAS

September 23, 1964

This Opinion
Overrules Opinion

S-79 in any

manner in which

conflict

Honorable Jerry Sadler
Commissioner
General Land Office
Austin, Texas

Dear Mr. Sadler:

Opinion No. C-313

Re: Computation of interest on
Veterans' Land Loans when
payment in advance of due
date is tendered.

Your opinion request reads as follows:

"I respectfully request an opinion of your
office on the following Veterans' Land Board
matter:

"Can the Veterans' Land Board of
Texas, by the adoption of a rule
or regulation, require, on an
account to be paid in full between
the regular May 1st or November 1st
installment dates, that interest be
paid to the date when such payment
is received?

"Previously, the Board's requirement pro-
vided that interest be computed to the next
regular installment date, when such payments
were made between the May 1st or November 1st
installment dates. This requirement was con-
firmed by the Attorney General of Texas on
July 31, 1953, by Opinion No. S-79.

"However, this has caused great dissatis-
faction on the part of the veteran contract
holders, who have asserted that the spirit and
intent of Article 5421m, V.R.C.S., Sec. 17,
has not been construed in a manner favorable
or beneficial to them when they desire to pay
their account in full between such regular in-
stallment dates, and who have contended that
this requirement is not consistent with the
general practice of private or commercial
lendors.

"I desire to recommend to the Board the
adoption of a rule providing that, when an
account is paid in full between such install-
ment dates, the interest will be computed to
the date payment in full is received, to
become effective on the date of its adoption.

"After review of the above opinion and
the statutes, I would appreciate your opin-
ion as to the legality of adopting such a
rule by the Veterans' Land Board."

In our study of your request, we have reviewed the
form of "Contract of Sale and Purchase" which, with varia-
tions not here material, has been used for many years by
the Veterans' Land Board. After reciting the cash down pay-
ment made by the veteran, the contract states:

"The unpaid principal . . . shall be
amortized . . . with annual interest at
4½% upon all unpaid principal. Buyer shall
pay . . . installments of principal and in-
terest semi-annually . . . on or before the
first day of each May and November hereafter
until the total purchase price is paid."

A study of the foregoing form reveals that the veteran
promises to pay interest only on the "unpaid principal."
Further, the "on or before" provision, as commonly under-
stood in commercial transactions, allows payment of the pur-
chase price balance at any time without penalty. Upon such
payment, there would be no unpaid principal remaining, and
hence no basis for further interest.

We pass next to a consideration of the validity of the
form used by the Board. Section 21 of the Veterans' Land
Act (Art. 5421m, V.C.S.) empowers the Veterans' Land Board
to "prescribe the form and contents of all . . . contracts
. . . or instruments whatsoever in any manner used by it
. . . when same shall not be in conflict with law." Is
there anything in the quoted provisions in the form above
referred to which conflict with law?

Article III, Section 49b, Texas Constitution, provides:

"The lands of the Veterans' Land Fund shall
be sold by the State to Texas veterans . . .
on such terms, and at such prices and rates of
interest, and under such rules and regulations
as are . . . provided by law."

Section 2(A) of the Veterans' Land Act makes it the duty of the Board "to fix the interest rates as prescribed by law" and "to formulate such policies, rules and regulations as may be necessary . . . to insure the proper administration of the law and to carry out the intent and purposes thereof."

Section 17 of the Act provides that the unpaid balance under the land purchase contract is to be amortized over a period not exceeding 40 years

"together with interest thereon at a rate to be fixed by the board, not to exceed 4½% per annum; provided, however, that the purchaser shall have the right on any installment date to pay any or all installments still remaining unpaid; provided further, that in any individual case, the board may, for good cause, postpone from time to time, upon such terms as the Board may deem proper, the payment of the whole or any part of any installment of the selling price or interest thereon. The board is empowered in each individual case to specify the terms of the contract entered into with the purchaser, not contrary to the provisions of this act. . . ."

From the foregoing, it is obvious that the Board under its granted power to fix the rate of interest, to prescribe the contract forms and to make rules and regulations, is authorized to make a rule that payment of the unpaid balance at any time stops the running of interest, unless such a rule is forbidden by the proviso in Section 17 giving the purchaser "the right on any installment date to pay any or all installments still remaining unpaid."

It will be noted that the form used by the Board fixes May 1st and November 1st as dates upon which installments are due under the contract. However, the effect of the "on or before" provisions of the contract is that any date is an installment date on which the veteran has the right, although not the duty, to make a prepayment. The Act does not impose any limits on the number or times of installment dates.

Further, we are of the opinion that the "on or before" provisions are not in conflict with the statute, even if it were considered that May 1st and November 1st were the only "installment dates." The statute gives the veteran the

right to prepay on installment dates.  If the Board's form denied the existence of such a right, there would be a conflict with the statute.  It is our view, however, that the granting of an additional prepayment privilege to the veteran does not create a conflict.

Applicable, we think, is the text statement in 53 Tex.Jur.2d 208, Statutes, Section 142:

"Thus a statute enumerating some of the things to be done by a commission is not an implied denial of authority to do anything else, and a recital of some of the ways in which waste occurs is not exclusive definition of the only kinds of waste which the legislature recognizes."  Citing Danciger Oil & Refining Company v. Railroad Commission, 49 S.W.2d 837, 841, rev. o. g. 122 Tex. 243, 56 S.W.2d 1075.

The purpose of the Veterans' Land Program is to help Texas veterans through the establishment of a liberal credit program by which Texas veterans may purchase Texas lands, which program supplants in some measure the giving away of public lands to veterans of wars as the same was done in the early history of this State.  The making of money by the State through harsh exactions from veteran purchasers is contrary to the spirit of the law.  Allowing prepayment without penalty, thus encouraging such prepayment, actually is in furtherance of the purposes of the program in at least two respects:

(1)  The history of the program has been that the demand of veterans for participation in the program has during much of the time exceeded available funds.  Every loan that is prepaid, therefore, makes money available for another veteran waiting in line.  The encouragement of prompt prepayment, therefore, is in furtherance of the program.

(2)  The history of the program has further been that the earlier loans to veterans were made at a lower rate of interest, the latest increase to $4\frac{1}{2}\%$ per annum having been authorized by the 1961 amendment to the Act.  Prepayment, therefore, on contracts executed before 1961 would enable the Board to re-lend the money to another veteran at a highter rate of interest, resulting in financial benefit to the Veterans' Land Program.

If a veteran is to be penalized for prepayment by requiring payment of unearned interest, he would, doubtless, prefer in many cases to keep his money, perhaps placing it in a savings account so as to earn interest, until the installment date rolls around, all to the detriment of the program. We do not believe that it was the legislative intent to effect such a result. The statute should be liberally construed in accordance with its basic intent and purpose, which is to help Texas veterans.

The general rule is set forth in 47 C.J.S. 53, Interest, Section 41b:

"Interest generally is computed to the time when the debt is paid."

We conclude that the proposed rule or regulation authorizing full payment of veterans' accounts between the May and November installment due dates, without penalty interest, may be validly adopted by the Veterans' Land Board, and we accordingly answer your question in the affirmative.

Opinion No. S-79 of this office was rendered at a time when, as pointed out by your letter, your Board was operating under a rule contrary to the proposed rule and regulation. If Opinion No. S-79 is in any manner in conflict with this opinion, same is hereby to such extent overruled.

### S U M M A R Y

The Veterans' Land Board may validly adopt a rule or regulation authorizing veterans' loans to be prepaid in full at any time, with interest being charged only to the date of such final payment.

Yours very truly,

WAGGONER CARR
Attorney General of Texas

By J. Arthur Sandlin
J. Arthur Sandlin
Assistant Attorney General

By W. John Allison, Jr.
W. John Allison, Jr.
Assistant Attorney General

JAS/WJA:afg

-1492-

APPROVED:

OPINION COMMITTEE

W. V. Geppert, Chairman
Linward Shivers
George Black
Jerry Brock
Ralph Rash

APPROVED FOR THE ATTORNEY GENERAL
BY:   Roger Tyler